# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

DAVID A. BROWN,

        Plaintiff,             :        Case No. 3:08-cv-141

                                District Judge Thomas M. Rose

    -vs-                          Magistrate Judge Michael R. Merz

                             :

OFFICER MALICKI, et al.,

        Defendants.

---

## REPORT AND RECOMMENDATIONS

---

This case is before the Court on Motion for Summary Judgment by the sole remaining Defendant[1], Springfield Police Officer Glen A. Malicki (Doc. No. 29). Officer Malicki has also filed a Motion for Judgment on the Pleadings as to any state law claims made by Plaintiff (Doc. No. 28). Plaintiff has responded to both these Motions (Doc. Nos. 34, 35) and filed his own Motion to Strike both of the Defendant's Motions (Doc. No. 36).

Discovery was ordered completed in this case by March 1, 2009 (Preliminary Pretrial Order, Doc. No. 19), so that the instant Motions are made after the parties have had the full opportunity for discovery provided in the scheduling order. Plaintiff, who is proceeding *pro se*, was advised of the nature and quality of evidence required in opposition to a motion for summary judgment (Order to Pro Se Plaintiff, Doc. No. 30).

Motions for summary judgment and judgment on the pleadings are dispositive motions on which a magistrate judge must provide a report and recommendations rather than a decision.

---

[1]This case was initially filed against Officer Malicki and the Springfield Police Department, but the Department has been dismissed from the case.

# SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed. R. Civ. P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id.* The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50, 106 S. Ct. at 2510-11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F. 2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F. 2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F. 3d 795 (6th Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S. Ct. at 2510.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n.*, 968 F. 2d 606, (6th Cir. 1992), *cert. denied*, 506 U.S. 1054, 113 S. Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal*

*Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990).  Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## Analysis

## State Law Claims

In his Motion to Strike and in other papers, Plaintiff says Defendant is attempting to mislead the Court by referring to state law claims.  He asserts strongly that this is a case under 42 U.S.C. § 1983, and not under state law.  Based on those statements, his Motion to Strike is **DENIED** as to the Motion for Judgment on the Pleadings and the Court should **GRANT** judgment on the pleadings because Plaintiff firmly says he is not making any state law claims.  The balance of the analysis in this Report assumes that only federal claims under § 1983 are in issue.

## 42 U.S.C. § 1983

42 U.S.C. §1983, R.S. §1979, was adopted as part of the Act of April 20, 1871, and reads, as amended:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action

4

at law, suit in equity, or other proper proceeding for redress , except that in any action brought against a judicial officer, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The statute creates a cause of action sounding essentially in tort on behalf of any person deprived of a constitutional right by someone acting under color of state law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709 (1999); *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986); *Carey v. Piphus,* 435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978). The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole,* 504 U.S. 158, 1125 S. Ct. 1827, 118 L. Ed. 2d 504 (1992). In order to be granted relief, a plaintiff must establish that the defendant deprived him of a right secured by the U.S. Constitution and the laws of the United States and that the deprivation occurred under color of state law. *See West v. Atkins,* 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981); *Flagg Brothers Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978).

Defendant Officer Malicki admits that he was acting under color of state law in his interactions with Plaintiff. The question is whether Officer Malicki deprived Plaintiff of any constitutional right and whether Officer Malicki is entitled to qualified immunity for any such deprivation.

Plaintiff filed this action in the Clark County Common Pleas Court in March, 2008, and it was removed to this Court by the Defendants. Plaintiff did not contest removal and now strongly asserts the case arises under 42 U.S.C. § 1983. This Court therefore has subject matter jurisdiction under both 28 U.S.C. § 1331 and § 1343.

In the Complaint, Plaintiff claims he has been deprived of equal protection of the laws and subjected to cruel and unusual punishment, but there is no evidence to support either of these claims. As to the Eighth Amendment claim, Plaintiff has repeatedly asserted that he is not attempting to overturn his conviction in this case, so as to avoid the bar of *Heck v. Humphrey,* 512 U.S. 477(1994). The motion papers make plain that Plaintiff's claim is for violation of his Fourth Amendment rights to be free from unreasonable search and seizure; the balance of the analysis here is devoted to that question.

It is undisputed that on the morning of March 30, 2006, Plaintiff was at 15 East Southern Street in Springfield, Ohio, with Jamie Forst, a minor female. The house was boarded up with plywood over at least some of the windows. A person described as an African-American male in his 40's had seen Brown and Forst enter the house that morning. He had seen Brown working on the house before, but had not seen the young woman. Ms. Forst was carrying a bag of some type and, according to the witness, "looked scared when she exited the truck." (Report of Detective King, attached to Plaintiff's opposition to summary judgment.) On this report, other officers, including Defendant Officer Malicki, were dispatched to the scene.

Officer Malicki swears that he and Officer Jerry Bowen approached the back door of the house which was boarded up (Malicki Affidavit, Exhibit A to Doc. No. 29, ¶ 4.) "One of us knocked on the door and a man later identified as David A. Brown answered the door. Upon questioning, Mr. Brown told us his step-daughter[2] was in the house with him." *Id.* The officers asked if they could enter the house "and Mr. Brown told us we could do that." *Id.* at ¶ 5.

Upon entering the house, Officer Malicki smelled burning marijuana. *Id.* at 6. Stepping into the second room of the house, the room in whose doorway Ms. Forst was standing, Officer Malicki

_____

[2]There is no evidence in the record that Brown was then married to Jamie Forst's mother, Diane Forst. They were, however, living together with Jamie on Linwood.

observed "a small television that was turned on. In addition, I saw an open 40 ounce can of beer, a pipe and a black bag with a small bag of marijuana inside of it on a table in the room. Also on the table was a burning candle. I also say [sic] a bag containing girl's clothing and personal items on the table."

The Springfield police officers did not have a search warrant for 15 East Southern. On the facts known to them when they were dispatched, they could not have obtained a valid search warrant because they did not have probable cause to believe that a crime was being committed there or that evidence of a crime would be found there. However, they did not need a warrant to knock on the door to inquire into what appeared to be suspicious and possibly dangerous circumstances. Once they knocked, they were granted permission to enter by Mr. Brown.

Mr. Brown makes statements in his motion papers denying that he gave them permission to enter the house, but he has not provided any **evidence** of that denial. His own statements are not sworn to.[3] Plaintiff offers the Affidavit of Jamie Forst who was also present. For reasons discussed below, that Affidavit is severely defective in form, but even if it were properly considered, it does not deny that Mr. Brown gave Officer Malicki permission to enter.[4]

This analysis, of course, assumes the officers needed consent to enter, which would only be the case if Mr. Brown had a reasonable expectation of privacy there. If he was "working" on the house as he claims, that does not establish that he had any exclusive right to be there. He offers no proof or even argument that he was the owner or a resident of 15 East Southern; all he claims even in the Complaint is that he was there "working," but that alone would not give him a reasonable expectation of privacy protected by the Fourth Amendment.

---

[3]In the Order to Pro Se Plaintiff, the Magistrate Judge notified Plaintiff of the quality of evidence necessary to oppose a motion for summary judgment.

[4]Indeed, her statement recites Brown's request for a search warrant came after the officers were in the house and when they began to look beyond the first room they entered.

Once Officers Malicki and Bowen were in the house, smelled the odor of burning marijuana, and saw a minor female standing in the doorway of the second room, they had probable cause to arrest Brown for possession of marijuana and possibly for corruption of a minor with drugs. Once they had probable cause to arrest Brown, they had authority without a warrant to search incident to the arrest, including a search of the gym bag. The search of the gym bag disclosed a camcorder with a videotape showing Brown's hands and Ms. Forst exposing her breasts to the camera. (Malicki Affidavit at ¶ 14.) Other evidence of felony-level sexual offenses was in the gym bag and led the officers to obtain a search warrant for the residence Ms. Forst shared with her mother and Mr. Brown. The evidence seized there led to Mr. Brown's guilty plea, conviction, and sentence to fifteen years confinement on eleven counts of use of a minor in nudity-oriented materials and one count of unlawful sexual conduct with a minor. That conviction was affirmed by the Clark County Court of Appeals and the Ohio Supreme Court declined to consider a further appeal. *State v. Brown*, 2008 Ohio App. LEXIS 3050 (Ohio App. 2nd Dist. July 18, 2008); *State v. Brown*, 2008 Ohio LEXIS 3600 (Dec. 31, 2008).

As Defendant points out, Plaintiff has not claimed that the arrest itself was unlawful[5]; even if he did, there plainly was probable cause for arrest. Once a valid arrest is made, arresting officers have authority to conduct a search incident to the arrest without any search warrant. The gym bag was clearly within the area where it was appropriate to search incident to the arrest. See *Northrob v. Trippett,* 265 F.3d 372 (6th Cir. 2001). Assuming for the sake of argument that Plaintiff has clearly established he denied consent for a search of the gym bag, no such consent was required under the Fourth Amendment.

As noted above, the form of the Affidavit of Jamie Forst and that of her mother Diane does

_____

[5]At least he made no such claim prior to his response to the Motion for Summary Judgment. In that response, he does make the claim that the arrest was unlawful, but he gives no grounds for that claim.

not satisfy the requirements of a valid affidavit in federal law. Each of those Affidavits is captioned "General Affidavit" and makes a recital that it is made under oath and upon personal knowledge. However, there is no text in the Affidavits before the signature of the affiant and the jurat of the notary. Instead, what purport to be statements of these two witnesses are attached. There is no way to verify that the attached text is what the witness intended to swear to. Indeed, the law does not know such a thing as a "General Affidavit." In addition, the Affidavits were purportedly executed August 28, 2008, long before the Motion for Summary Judgment was filed and obviously not in response to the claims made therein. Affidavits in this form cannot create a genuine issue of material fact, although even if considered they do not contradict the essential facts relied on by Defendant.

Plaintiff puts much emphasis on a claimed forced entry at the front of 15 East Southern at the same time that Officers Malicki and Bowen were at the rear door. Even assuming the truth of these allegations (and there is no proper evidence submitted in support of them), they are immaterial. Plaintiff has not sued any officer who was at the front door and the evidence upon which he was convicted was not found or seized by officers coming in the front door. Instead, the relevant search and seizure were done by the sole Defendant, Officer Malicki.

Finally, Plaintiff has not shown or tried to show that he had any property interest in the house at 15 East Southern. If damage was done to the front of the house by an unconstitutional forced entry, the person who suffered that damage was the owner of the property, not Plaintiff.

In addition to denying that Plaintiff suffered any unconstitutional deprivation, Defendant seeks dismissal under the doctrine of *Heck v. Humphrey,* 512 U.S. 477(1994). In that case, the Supreme Court held "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to

make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under §1983." As the Sixth Circuit made plain in *Schilling v. White*, 58 F. 3d 1081 (6th Cir. 1995), a person who has been convicted with evidence he claims was illegally seized has no cause of action under 42 U.S.C. § 1983 for the allegedly illegal seizure unless and until his conviction has been set aside. That is to say, he has suffered no injury from the alleged constitutional violation until he can show that it resulted in his unlawful imprisonment.[6] At least at the present time, Plaintiff cannot do that: his conviction has been affirmed on appeal and he has not sought or obtained a writ of habeas corpus. Thus his claims are barred by the doctrine of *Heck v. Humphrey.*

Plaintiff's claims are also barred by his plea of guilty to the offenses based on the illegally seized evidence. So far as the record in this case shows, Plaintiff pled guilty without ever having sought to suppress the evidence found in the gym bag. Even if he had filed a motion to suppress, he waived that issue by pleading guilty and not appealing any denial of suppression.  A guilty plea renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt.  *Menna v. New York,* 423 U.S. 61 (1975).  A guilty plea constitutes a break in the chain of events leading up to it.  *Tollett v. Henderson*, 411 U.S. 258 (1973).

Finally, Officer Malicki raises the defense of qualified immunity.  Government officials performing discretionary functions are afforded a qualified immunity under 42 U.S.C. §1983 as long as their conduct "does not violate clearly established statutory or constitutional rights of which a

---

[6]There certainly can be Fourth Amendment violations occurring in the course of an arrest which are independent of any eventual conviction, e.g., the use of excessive force in effecting an arrest. Those Fourth Amendment claims can be litigated without being barred by *Heck* because a plaintiff's recovery in such a case does not imply any constitutional violation in obtaining the conviction. This is not such a case: without the evidence which Plaintiff says was illegally seized there would have been no felony sexual offense charges against him.

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir., 1994); *Flatford v. City of Monroe*, 17 F.3d 162 (6th Cir. 1994). The question is not the subjective good or bad faith of the public official, but the "objective legal reasonableness" of his or her action in light of clearly established law at the time the official acted. *Anderson v. Creighton*, 483, U.S. 635 (1987). When a qualified immunity defense is presented on motion for summary judgment, the court must determine the circumstances with which defendants were confronted and the information they possessed. To make this determination, the Court must consider all the undisputed evidence produced in discovery, read in the light most favorable to the plaintiff. *Poe v. Haydon*, 853 F.2d 418, 425 (6th Cir. 1988), following *Green v. Carlson*, 826 F.2d 647, 650-52 (7th Cir. 1987). Application of the doctrine of qualified immunity to a particular defendant is a question of law. *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). To overcome a defendant's motion for summary judgment based on qualified immunity, the plaintiff: (1) identify a clearly established right alleged to have been violated; and (2) establish that a reasonable officer in the defendant's position would have known that the conduct at issue was undertaken in violation of that right. *Mays v. City of Dayton*, 134 F.3d 809 (6th Cir. 1998), citing *Pray v. Sandusky,* 49 F.3d 1154, 1158 (6th Cir. 1995). If the court finds no valid claim pursuant to 42 U.S.C. §1983, the court need not reach the issue of qualified immunity. *Carlson v. Conklin,* 813 F.2d 769 (6th Cir. 1987).

Because the Court should decide there was no constitutional violation here, it need not reach the question of qualified immunity.


**CONCLUSION**


Plaintiff disclaims any state law claims are being made in this case. Therefore Defendant's

Motion for Judgment on the Pleadings should be granted. Plaintiff's Motion to Strike is hereby denied. There are no disputed material questions of fact because Plaintiff has presented no evidence in a form allowable under Fed. R. Civ. P. 56. In contrast, Defendant has presented his own Affidavit, which stands uncontradicted, that he had permission to enter 15 East Southern from Mr. Brown, that he smelled and then saw marijuana, that he placed Brown under arrest, and that he thereupon searched the gym bag incident to the arrest, disclosing the evidence which led to Mr. Brown's conviction, which has been affirmed on appeal and not set aside in habeas corpus. The Motion for Summary Judgment should be granted and all federal claims against Officer Malicki dismissed with prejudice.

April 20, 2009.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).